Virginia MEANS, Plaintiff,

v.

CITY OF DAYTON, Defendant.

No. C–3–98–058.

United States District Court,
S.D. Ohio,
Western Division.

July 28, 2000.

Gary David Andorka, Maguire & Schneider, Columbus, OH, for Plaintiff.

Neil Frank Freund, Lisa Ann Hesse, Freund Freeze & Arnold, Dayton, OH, for Defendant.

EXPANDED OPINION SETTING FORTH REASONING AND CITATIONS OF AUTHORITY IN SUPPORT OF ORDER OF MARCH 24, 2000 (DOC. # 30) SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 19); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, Chief Judge.

The Plaintiff initiated this litigation, claiming that Defendant City of Dayton

("Defendant") violated the Fair Housing Act, as amended by the Fair Housing Act Amendments ("FHAA"), 42 U.S.C. § 3601, *et seq.*, and § 4112.02 of the Ohio Revised Code, by imposing conditions upon her operation of a residential care facility housing five mentally disabled adults. Since 1990, the Plaintiff has been operating for-profit, foster homes for mentally disabled adults within the City of Dayton.[1] Initially, Plaintiff operated her business from a residence located at 714 West Fairview Avenue, in Dayton, where she cared for two roomers with mental disabilities. In 1995 or 1996, Plaintiff transferred her business to a residence located at 715 West Fairview Avenue, in Dayton, where she also cared for male roomers with mental disabilities. Plaintiff's husband has continued to operate the foster home located at 714 West Fairview. Both of those structures are located in an area of the City of Dayton which is zoned R–6.

The Defendant did not cause the Plaintiff to experience problems with the operation of the two foster homes, until she decided to change her use of the dwelling located at 715 West Fairview Avenue, from a foster home housing two mentally disabled adults to a residential care facility in which five such individuals would reside. On September 23, 1996, Plaintiff filed an application for a zoning certificate, which would have permitted her to use 715 West Fairview Avenue in that manner. The application was rejected, because such a use would have constituted a "residential care home" under § 150.0329 of the Dayton Revised Code of General Ordinances ("RCGO").[2] A residential care facility is a conditional use in an R–6 district, rather than being a permitted use. RCGO § 150.134.

On November 12, 1996, Plaintiff submitted an application for a conditional use permit, which would allow her to house five mentally disabled adults in the structure at 715 West Fairview Avenue. That application was heard by the Dayton Board of Zoning Appeals ("BZA"), on December, 3, 1996, and was granted on December 9, 1996, subject to certain conditions. However, since proper notice had not been given to all affected parties, the BZA subsequently rescinded its decision to approve the Plaintiff's request for a conditional use permit. The Plaintiff did not appeal either the BZA's decision to put conditions on its initial approval of her application or that governmental body's decision to rescind its initial approval.

After the hearing on her application, Plaintiff submitted additional materials concerning the residential care facility she intended to operate at 715 West Fairview Avenue. Those materials indicated that the Plaintiff would have two employees. In addition, the materials included site plans, which indicated that she proposed to remove a garage located at the rear of the property in order to provide three off-street parking spaces. The site plans also indicated that the parking would be screened by a privacy fence; however, the site plans did not contain sufficient detail to show that the Plaintiff would be in compliance with the screening and parking requirements contained in the Dayton zoning ordinances.

After proper notice had been given, the BZA conducted a second hearing on Plaintiff's application for a conditional use permit. Although some neighboring residents expressed concern about the Plaintiff's request, the BZA approved her application on February 27, 1997. However, that approval was subject to the following conditions, to wit: 1) that the parking lot not be screened with a chain link fence; 2) that the parking lot have a 24–foot wide aisle; and 3) that there be a review in one year

---

1. Because this matter came before the Court on the Defendant's Motion for Summary Judgment (Doc. # 19), the Court sets forth the facts and circumstances giving rise to this litigation in the manner most favorable to the Plaintiff, the party against whom summary judgment has been sought.

2. Plaintiff did not appeal the decision.

in order to ensure that the Plaintiff was meeting those conditions and to ascertain whether additional conditions were necessary. In addition, the BZA, noting that the Plaintiff had failed to provide copies of inspection reports certifying that 715 West Fairview Avenue was in compliance with all building codes, indicated that its approval was also conditioned upon Plaintiff obtaining a zoning permit and all other necessary permits. If she failed to obtain all such permits within six months, the BZA's approval of the conditional use permit would be void. The Plaintiff did not appeal the conditions placed upon the approval of the requested permit.

In preparation for constructing the parking lot, the Plaintiff, in February, 1997, incurred expenses to remove the garage at the rear of the property located at 715 West Fairview Avenue. After having obtained the requested conditional use permit, the Plaintiff, in March, 1997, submitted another site plan and an application for a building permit to construct a parking lot as an accessory to the residential care facility. Because the zoning administrator had difficulty obtaining a scale for the site plan, he was unable to determine whether the parking lot would have a 24-foot aisle, as required by the BZA. Accordingly, her application was denied. For the same reason, a subsequent application submitted in May, 1997, was also denied. Plaintiff has not submitted any further applications to construct a parking lot, nor did she appeal the denial of the two which she had submitted.

On March 31, 1997, the Design Engineering Division of the City of Dayton advised the Plaintiff that it was likely that the parking lot at 715 West Fairview Avenue would require a drainage system. On July 28, 1997, Plaintiff submitted a drainage plan. After reviewing that plan, Estill Johnson ("Johnson"), an engineer employed by the Design Engineering System, informed Plaintiff that her plan was deficient. Johnson suggested methods which the Plaintiff might consider to meet the drainage requirements, such as grading the area or installing a dry well to intercept surface runoff. Johnson has also made numerous other requests for additional information concerning Plaintiff's drainage. Rather than responding, Plaintiff has abandoned her efforts to obtain approval for her drainage plan.

Plaintiff has not obtained either a zoning or an occupancy permit from the City of Dayton. Although Plaintiff has removed the chain link fence and installed a privacy fence, she has not complied with the other conditions placed upon the grant of her conditional use permit in February, 1997. She has also abandoned efforts to obtain a building permit for the parking lot. Nevertheless, since April, 1998, Plaintiff has been operating her residence at 715 West Fairview Avenue as a residential care facility with four roomers.[3]

Plaintiff initiated this litigation, alleging that Dayton had violated the FHAA and § 4112.02, by imposing conditions on her use of 715 West Fairview Avenue to house five mentally disabled adults. In particular, the Plaintiff focuses upon the requirements that she replace the chain link fence at that location with a privacy fence, that she provide off-street parking and that the parking lot have adequate drainage. After the parties had completed discovery, the Defendant filed a Motion for Summary Judgment (Doc. # 19). On March 24, 2000, this Court entered an Order in which it sustained that motion. *See* Doc. # 30. In this Expanded Opinion, the Court sets forth its reasoning and citations of authority in support of that Order. The Court begins by setting forth the standards which are applicable to all motions for summary judgment.

---

**3.** During her deposition, Plaintiff testified that, although she is licensed by the state of Ohio to house five individuals in the residence at 715 West Fairview Avenue, she has had only four roomers, because the fifth roomer was invariably incompatible with the other four. Plaintiff's Dep. at 29.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on

a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the non-moving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As an initial matter, this Court, as have the parties, will analyze the Plaintiff's state law claim under the same legal standards which are applicable to her claim under the FHAA. Given the close similarity between the FHAA and § 4112.02, Ohio courts have employed the standards applicable to the federal statute, in determining whether a defendant has engaged in housing discrimination in violation of the state statute. *See Ohio Civil Rights Commission v. Harlett*, 132 Ohio App.3d 341, 344, 724 N.E.2d 1242, 1244 (1999); *Strader v. Johnson*, 1998 WL 894602 (1998). Therefore, if the Defendant is entitled to summary judgment on Plaintiff's claim under the FHAA, it is also entitled to summary

judgment on her claim under the Ohio statute.

The FHAA provides, in pertinent part, that it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... a person residing in or intending to reside in that dwelling after it is sold, rented or made available." 42 U.S.C. § 3604(f)(1). The FHAA provides further that, for purposes of § 3604(f), discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The Sixth Circuit has repeatedly held that § 3604(f) applies to zoning and other laws which regulate the location of group homes for the handicapped and disabled. *See Larkin v. Michigan Dept. of Social Services*, 89 F.3d 285, 289 (6th Cir.1996); *Smith & Lee Associates, Inc. v. City of Taylor, Mich. ("Smith & Lee I")*, 13 F.3d 920, 924 (6th Cir.1993); *Marbrunak, Inc. v. City of Stow, Ohio*, 974 F.2d 43, 45 (6th Cir.1992). In *Larkin*, the Sixth Circuit noted that a claim of handicap discrimination under the FHAA can be established by showing that the law or ordinance in question has an disparate impact upon disabled individuals, that the law intentionally discriminates against disabled individuals or that there has been a failure to provide a reasonable accommodation. 89 F.3d at 289. *Accord Smith & Lee Associates, Inc. v. City of Taylor, Mich. ("Smith & Lee II")*, 102 F.3d 781, 790 (6th Cir.1996). Herein, the Plaintiff relies upon the second and third means of proving discrimination, i.e., intentional discrimination and failure to provide a reasonable accommodation. As a means of analysis, the Court will address the two theories in the above order.[4]

---

4. In her Complaint, the Plaintiff does not allege that the conditions imposed upon the grant of a conditional use permit had a disparate impact on disabled individuals. In its Motion for Summary Judgment (Doc. # 19), the Defendant argued that Plaintiff was not relying upon a disparate impact theory. In her Memorandum in Opposition to the Defendant's Motion for Summary Judgment, the

*I. Intentional Discrimination*

In assessing the Plaintiff's claim that Dayton has intentionally discriminated against disabled individuals, it is important to focus upon what the Defendant has done. Rather than denying Plaintiff permission to operate 715 West Fairview Avenue as a residential care facility housing five mentally disabled adults, Dayton has approved her application for a conditional use permit. However, that approval was conditioned upon the Plaintiff complying with certain provisions of the Dayton zoning ordinances. In particular, she was required to provide off-street parking, to ensure that the parking lot was adequately drained and to screen the parking lot with a privacy fence or dense shrubbery in the place of the chain link fence. Dayton argues that it is entitled to summary judgment on the Plaintiff's theory of intentional discrimination, because those conditions imposed upon Plaintiff's use of 715 West Fairview Avenue, as a residential care facility, are no different from the conditions that would be imposed upon any similar use within an R–6 district, which did not house disabled individuals. Plaintiff, on the other hand, argues that the requirements of the Dayton zoning ordinances are facially discriminatory, because those requirements would not apply to the structure at 715 West Fairview Avenue if she resided with family members, rather than unrelated, mentally disabled adults.[5] As a means of analysis, the Court will initially discuss the relevant portions of the City of Dayton's Zoning Code, following which it will turn to the question of whether those provisions are, as the Plaintiff suggests, facially discriminatory.

As is indicated above, 715 West Fairview Avenue is located in an area zoned R–6. Under the Dayton Zoning Code, the Plaintiff was permitted to care for two unrelated, mentally disabled adults at that residence. *See* RCGO § 150.133(A) (authorizing permitted home occupations in an R–6 district); RCGO § 150.341(D) (defining permitted home occupations to include foster care homes for adults, as long as not more than two adults are cared for by the resident owner). Plaintiff's proposed use of 715 West Fairview Avenue as a residential care facility is a conditional use, rather than being a permitted use, in other words, a use conditioned upon certain requirements being met by the property owner. RCGO § 150.134(I). To obtain approval for that permitted use, Plaintiff was required to comply with the other provisions of the Dayton Zoning Code. Among those requirements is the obligation of providing off-street parking. Under RCGO § 150.345, off-street parking must be provided whenever *any* building is "structurally altered, enlarged, increased in capacity or changed in use." By seeking to alter the use of 715 West Fairview Avenue from an adult foster care home (a permitted use) to a residential care home, the Plaintiff was, thus, required by the Dayton Zoning Code to provide off-street parking. Plaintiff also complains about the requirements that she provide screening and drainage for the parking lot. Those additional requirements flow from the Plaintiff's obligation to provide off-street parking. Under RCGO § 150.350, all parking lots must be screened, either with a privacy fence (the option chosen by the Plaintiff) or with dense shrubbery. In addition, the ordinance requires all parking lots to have adequate drainage.

In *Comcare, Inc. v. Metropolitan Government of Nashville and Davidson County*, 1994 WL 601020 (6th Cir.1994), the plaintiff purchased a residence in which it wanted to house six autistic teenagers. The defendant refused to issue an occu-

---

Plaintiff has not controverted Defendant's assertion in that regard.

**5.** In *Larkin,* the Sixth Circuit held that showing that a zoning ordinance is facially discriminatory is merely another method of demonstrating that the defendants have engaged in intentional discrimination. 89 F.3d at 289.

pancy permit, until the plaintiff complied with certain fire-safety regulations. The plaintiff then brought suit, alleging that the denial of the occupancy permit constituted discrimination in violation of the FHAA. The District Court granted summary judgment to the defendant. Upon appeal, the Sixth Circuit affirmed, concluding that the fire-safety regulations were not discriminatory, since they were applicable to all group homes, not just those in which handicapped individuals would reside. Similarly, herein, the Plaintiff has been required to provide off-street parking, as a result of the application of facially neutral land use ordinances which would have imposed the same obligation on anyone who, like the Plaintiff, had sought to alter the use of a building. Obligating the Plaintiff to provide screening and drainage for that off-street parking likewise flowed from the application of facially neutral ordinances imposing such requirements on all off-street parking. Moreover, the lack of facial discrimination in the relevant provisions in the Dayton Zoning Code is also demonstrated by the fact that anyone proposing to house between 2 and 6 roomers in her home would be required to provide off-street parking, with the concomitant screening and drainage for that parking, regardless of whether the roomers were handicapped.

■ Nevertheless, the Plaintiff argues that the regulations relating to parking, screening and drainage are facially discriminatory, because they impose conditions on residential care facilities which are not applicable to single family residences of a similar size. Plaintiff' interpretation of the Zoning Code is correct. If a family of six individuals had moved into 715 West Fairview Avenue, they would not have been required by the Dayton Zoning Code to construct off-street parking, with the concomitant obligations of providing screening and drainage, because the use of

that structure as a family residence would not have changed. However, that does not change the requirements concerning off-street parking in the Dayton Zoning Code from facially neutral to facially discriminatory. The requirement that the Plaintiff comply with the parking regulations flows from the fact that she is seeking to alter the use to which she will put her residence, not from the fact that mentally disabled adults will reside therein. Indeed, she was not required to construct a parking lot, when she housed two mentally disabled adults at 715 West Fairview Avenue, because such a use constituted a permitted one under the Dayton Zoning Code (i.e., an adult foster care home). Moreover, that the relevant portions of the Dayton Zoning Code are not facially discriminatory can be seen by examining cases in which courts have found facial discrimination. For instance, in *Epicenter of Steubenville, Inc. v. City of Steubenville*, 924 F.Supp. 845 (S.D.Ohio 1996), upon which Plaintiff relies, the City of Steubenville enacted an ordinance which placed a one-year moratorium on approval of adult care facilities, a type of group home in which handicapped adults would reside. Judge Joseph Kinneary held that the ordinance violated the FHAA, because it singled out handicapped residents for adverse treatment. Similarly, in *Larkin, supra,* the Sixth Circuit concluded that a Michigan statute, which prohibited one residential care facility for mentally retarded adults from locating within 1500 feet of another such facility, was facially discriminatory, because it singled out group homes for disabled individuals for regulation. In contrast, the relevant provisions in the Dayton Zoning Code do not single out the disabled for adverse treatment; rather, anyone seeking to alter the use of his or her property, beyond one permitted by ordinance, must comply with the parking, screening and drainage requirements.[6]

---

**6.** Moreover, the Plaintiff has failed to present any evidence which would raise a genuine issue of material fact as to whether the Defen-

dant adopted those facially neutral ordinances, with the intent to discriminate against disabled residents of the structures

Accordingly, the Court concluded that the evidence did not raise a genuine issue of material fact concerning the Plaintiff's theory that the Defendant had intentionally discriminated against her in violation of the FHAA, because the relevant provisions of the Dayton Zoning Code are facially discriminatory.

## II. Failure to Provide Reasonable Accommodation

As is indicated above, § 3604(f)(3)(B) provides that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling" In *Smith & Lee II*, the Sixth Circuit elaborated upon that statutory provision: [7]

We begin by defining the three operative elements of 42 U.S.C. § 3604(f)(3)(B): "equal opportunity," "necessary," and "reasonable."

With respect to the phrase "equal opportunity," the House Report on the Act offers relevant context:

The Fair Housing Amendments Act, like Section 504 of the Rehabilitation Act of 1973, as amended, is a clear pronouncement of a national commitment to *end the unnecessary exclusion of persons with handicaps from the American mainstream.*

House Comm. on the Judiciary, Fair Housing Amendments Act of 1988, H.R.Rep. No. 711, 100th Cong., 2d Sess. 18, reprinted in 1988 U.S.C.C.A.N. 2173, 2179 (footnote omitted) (hereinafter 1988 U.S.C.C.A.N.) (emphasis added). We find persuasive the analysis of courts that define equal opportunity under the FHAA as giving handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream:

[T]he Act prohibits local governments from applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities.

*Bryant Woods Inn, Inc. v. Howard County, Md.,* 911 F.Supp. 918, 946 (D.Md.1996) (citation omitted); *see also City of Edmonds v. Washington State*

---

affected by the parking, screening and drainage regulations. In addition, the Plaintiff has not presented evidence that the facially neutral ordinances were applied in a discriminatory manner. In *Smith & Lee II, supra,* the Sixth Circuit held that the denial of a request for an alteration of zoning regulations, to permit the construction of a group home for disabled, elderly individuals, did not raise an inference that the defendant had intentionally discriminated against the handicapped, since the officials making the determination had reasonably applied the municipality's zoning ordinances. Herein, the relevant provisions of the Dayton Zoning Code required the Plaintiff to provide off-street parking, as well as screening and drainage for that parking. Therefore, the BZA reasonably applied the Dayton Zoning Code when it imposed conditions on the grant of the requested conditional use permit.

7. Therein, the Sixth Circuit affirmed the finding of the District Court that the defendant had violated § 3604(f)(3)(B). That litigation arose out of the plaintiff's proposal to locate a for-profit, group home in which more than six disabled elderly, individuals would reside, even though defendant's zoning ordinances limited such group homes to six individuals. The plaintiff sought, *inter alia,* an accommodation, permitting it to exceed that limitation. The District Court found that the defendant had violated § 3604(f)(3)(B), by denying the requested accommodation, because the evidence established that it would not be possible for such a group home to exist, if it were limited to six residents. The Sixth Circuit held that the District Court's finding was not clearly erroneous. Herein, by contrast, the Plaintiff has neither presented evidence nor argued that it would be impossible for a group home with five residents to exist, if it were required to comply with the parking, screening and drainage requirements contained in the Dayton Zoning Code.

*Bldg.Code Council*, 18 F.3d 802, 806 (9th Cir.1994), *aff'd*, 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) ("Congress intended the FHAA to protect the right of handicapped persons to live in the residence of their choice in the community."). Moreover, the phrase "equal opportunity," at least as used in the FHAA, is concerned with achieving equal results, not just formal equality. *See City of Edmonds*, 18 F.3d at 806 ("The FHAA imposes an *affirmative duty* to reasonably accommodate handicapped people.") (emphasis added); *Proviso Ass'n of Retarded Citizens v. Village of Westchester, Ill.*, 914 F.Supp. 1555, 1563 (N.D.Ill.1996) (rejecting city's argument that "because Plaintiffs are subject to requirements imposed on all groups of unrelated non-disabled people, they have an 'equal opportunity' to live in the . . . dwelling").

The statute links the term "necessary" to the goal of equal opportunity. *See* 42 U.S.C. § 3604(f)(3)(B) ("accommodation . . . necessary to afford . . . equal opportunity"). Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice. *See Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir.1995) ("[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability."). Thus in the first appeal, we remanded for the District Court to consider whether an accommodation was necessary to enable investors to develop AFC homes. *See Smith & Lee*, 13 F.3d at 931; *see also Brandt v. Village of Chebanse, Ill.*, 82 F.3d 172, 174 (7th Cir.1996) (noting that, for the handicapped, "joint living arrangements are essential, [and] some minimum size may be essential to the success of the venture").

Finally, with respect to what constitutes "reasonable," the House Report notes that "[t]he concept of 'reasonable accommodation' has a long history in regulations and case law dealing with discrimination on the basis of handicap." 1988 U.S.C.C.A.N., supra, at 2186. In a footnote at the end of that sentence, the House Report cites *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), which interpreted Section 504 of the Rehabilitation Act. As several courts have noted, the House Report's numerous references to Section 504 indicate that Congress intended courts to apply the line of decisions interpreting "reasonable accommodations" in Section 504 cases when applying the FHAA. *See, e.g., Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 334 (2nd Cir.1995); *City of Edmonds*, 18 F.3d at 806. Under *Davis*, an accommodation is reasonable unless it requires "a fundamental alteration in the nature of a program" or imposes "undue financial and administrative burdens." 442 U.S. at 410, 412, 99 S.Ct. 2361. As the Seventh Circuit has noted, "cost (to the defendant) and benefit (to the plaintiff) merit consideration as well." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir.1995). Indeed, in the first iteration of this appeal, we noted that "[w]e balance the City's interests against the need for an accommodation in this case." *Smith & Lee*, 13 F.3d at 931.

*Id.* at 794–95. *See also Bryant Woods Inn, Inc. v. Howard County, Maryland*, 124 F.3d 597 (4th Cir.1997).

■ The parties agree that, in order to establish a claim under § 3604(f)(3)(B), a plaintiff must show: 1) that she suffers from a handicap; 2) that the defendant knew of the handicap; 3) that an accommodation of the handicap is necessary to afford plaintiff an equal opportunity to use and enjoy the housing in question; and 4) defendants refused to make such an accommodation. *See* Defendant's Motion for Summary Judgment (Doc. # 19) at 33 (citing *Schanz v. The Village Apartments*, 998 F.Supp. 784, 791 (E.D.Mich.1998)); Plain-

tiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. # 24) at 6 (same). *Accord, United States v. California Mobile Home Park Mgmt. Co.,* 107 F.3d 1374, 1380 (9th Cir. 1997). The Defendant concedes that the Plaintiff can meet the first two prongs of that test, given that her roomers are disabled, a fact of which it was aware. Defendant argues, however, that the evidence does not raise a genuine issue of material fact pertaining to the third and fourth prongs. The Plaintiff takes the opposite position. For reasons which follow, this Court agrees with the Defendant that the evidence does not raise a genuine issue of material fact regarding the third prong of the above test, i.e., whether the requested accommodation is necessary to afford Plaintiff's roomers an equal opportunity to use and enjoy the housing in question.[8]

■ It cannot be disputed that, by granting Plaintiff a conditional use permit, the Defendant has acceded to her request that mentally disabled individuals be allowed to reside with her at 715 West Fairview Avenue. Thus, the Plaintiff's roomers have been afforded an equal opportunity to live in the community. Of course, the granting of that permit was conditioned upon her providing off-street parking, as well as screening and drainage for that parking. Plaintiff argues that a reasonable accommodation in this case would have been dispensing with the requirement that she provide off-street parking, since that requirement caused her to expend a sum of money to demolish her garage, in preparation for the construction of a parking lot, and to erect a privacy fence, in lieu of the existing chain link fence. The flaw in the Plaintiff's argument is that she has failed to present evidence which raises a genuine issue of material fact concerning the question of whether such an accommodation was necessary, in other words, that, because of the failure of the Defendant to dispense with the off-street parking requirement, mentally disabled adults have not been able to live with her at 715 West Fairview Avenue. Although the failure to dispense with the off-street parking requirement has caused the Plaintiff to incur expenses to remove her garage and to erect a privacy fence, she has not presented evidence tending to demonstrate that her increased costs will prevent mentally disabled individuals from living with her. Therefore, the Plaintiff has failed to present evidence, raising a genuine issue of material fact that an accommodation is necessary to af-

---

**8.** With respect to the fourth prong, Defendant points out that the Plaintiff did not appeal any of the decisions of the BZA and that she has failed to provide information to City officials concerning off-street parking and drainage. According to the Defendant, the Plaintiff's actions in that regard were the cause of any failure of accommodation. The Court's conclusion that the evidence does not raise a genuine issue of material fact pertaining to the third prong eliminates the need to decide whether the Defendant is entitled to summary judgment, because the evidence does not raise a genuine issue of material fact concerning the fourth element of Plaintiff's failure to accommodate claim under § 3604(f)(3)(B). Nevertheless, the Court will state briefly why the evidence does not raise a genuine issue of material fact concerning this fourth prong of Plaintiff's claim. Courts have held that a failure to accommodate claim is not ripe for adjudication, when the plaintiff has not sought an accommodation through the vari-

ance or conditional use procedures provided by the local zoning ordinances. For instance, in *United States v. Village of Palatine,* 37 F.3d 1230, 1234 (7th Cir.1994), the Seventh Circuit held that a plaintiff could not bring a failure to accommodate claim under the FHAA, until the government had been "afforded an opportunity to make such an accommodation pursuant to its own lawful procedures—unless it is clear that the result of such procedures is foredoomed." *See also, Oxford House–C v. City of St. Louis,* 77 F.3d 249 (8th Cir.1996) (plaintiff's failure to accommodate claim not ripe for adjudication, since it had not taken advantage of the defendant's variance procedures), *cert. denied,* 519 U.S. 816, 117 S.Ct. 65, 136 L.Ed.2d 27 (1996). Herein, the Plaintiff did absolutely nothing to request an accommodation concerning the requirements that she provide off-street parking and the concomitant screening and drainage for that parking.

ford the residents of 715 West Fairview Avenue an equal housing opportunity. In *Hemisphere Building Co., Inc. v. Village of Richton Park,* 171 F.3d 437 (7th Cir. 1999), the court rejected the plaintiff's claim that the defendant had failed to provide a reasonable accommodation. The litigation arose out of the plaintiff's desire to construct four two-unit residences for disabled individuals on one lot. The defendant offered to permit the plaintiff to construct three such units. The plaintiff rejected that offer, concluding that limiting the development to a total of six housing units would have increased the per unit costs and, thus, have made sales more difficult. After the District Court had granted summary judgment to the defendant on plaintiff's failure to accommodate claim under the FHAA, the Seventh Circuit affirmed, concluding that the FHAA does not override local zoning ordinances merely because they make housing for the handicapped more expensive. This Court finds the rationale and result of that decision to be persuasive and holds that the Defendant did not violate § 3604(f)(3)(B), even though the conditions imposed upon the granting of the conditional use permit has caused her to incur additional expenses.

For those reasons, this Court concluded that the Defendant was entitled to summary judgment on Plaintiff's failure to accommodate theory.

For the foregoing reasons, this Court sustained the Defendant's Motion for Summary Judgment (Doc. # 19). The Court directs that judgment be entered in favor of the Defendant and against the Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.