OHIO CIVIL RIGHTS COMMISSION et al., Appellants,

v.

HARLETT et al., Appellees.

[Cite as *Ohio Civil Rights Comm. v. Harlett* (1999), 132 Ohio App.3d 341.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–98–036.

Decided Feb. 26, 1999.

*Betty D. Montgomery,* Attorney General, *Marilyn S. Tobocman* and *Susan J. Reynolds,* Assistant Attorneys General, for appellants.

*Max E. Rayle,* for appellees.

SHERCK, Judge.

This appeal comes to us from a judgment issued by the Wood County Court of Common Pleas, which found that a landlord had not violated Ohio's statutory law prohibiting the use of discriminatory housing rental advertisements. Because we conclude that the trial court properly dismissed the action but improperly awarded attorney fees, we affirm in part and reverse in part.

Appellees, William and Joyce Harlett, placed an advertisement in the Perrysburg Messenger Journal for the rental of a small, second-story apartment. The ad included the following language: "mature adults only." Appellants Amy and Anthony Thompson inquired about the apartment on the same day, but at separate times. Amy Thompson was allegedly told that because of the business located on the first story of the building, their three-year old son could not be home during business hours. Ultimately, appellees rented the apartment to a single mother with a teen-aged child.

Several months later, the Thompsons filed a complaint with appellant Ohio Civil Rights Commission. They alleged that the Harletts had refused to rent to them because they had a minor child and that the advertisement was discriminatory against families with children, in violation of R.C. 4112.02(H)(1), (4), and (7). The complaint also named the Perrysburg Messenger Journal and its owners as parties.

The Harletts elected to defend the suit in the Wood County Court of Common Pleas. Appellants later amended the complaint to allege only a violation of R.C. 4112.02(H)(7), discrimination in advertisement. Prior to trial, appellants dismissed the Perrysburg Messenger Journal and its owners from the suit after reaching a settlement with those parties.

Following a hearing on the merits, the trial court found the Thompsons' testimony not credible and the language of the advertisement not *per se* discriminatory because it was ambiguous. The court further determined that there was no discriminatory intent behind the ad and dismissed appellants' claim. The court then concluded that the suit was frivolous and awarded attorney fees to appellees pursuant to R.C. 2323.51.

Appellants now appeal that judgment, setting forth the following three assignments of error:

"FIRST ASSIGNMENT OF ERROR: The trial court erred by imposing limitations, not required by the statute, upon the application of R.C. § 4112.02(H)(7), the statutory prohibition against discriminatory advertising of housing accommodations.

"SECOND ASSIGNMENT OF ERROR: The trial court erred in refusing to apply federal case law interpreting Title VIII of the Federal Fair Housing Act, 42 U.S.C. § 3604(c), which is substantially equivalent to the Ohio Civil Rights Statute governing housing discrimination, R.C. § 4112.02(H)(7).

"THIRD ASSIGNMENT OF ERROR: The trial court erred in finding that the appellant was liable for attorney fees under R.C. § 2323.51."

## I

We will address appellants' first two assignments of error together. In essence, appellants contend that the trial court erred in its interpretation of R.C. 4112.02(H)(7) and federal case law based upon the comparable federal statute, Section 3604(c), Title 42, U.S.Code.

The main issue here is whether the mere use of the words "mature adults only" in a housing rental advertisement constitutes a *per se* violation of R.C. 4112.02(H) or whether evidence as to the surrounding circumstances and defendant's intent may be permitted to rebut such allegation. R.C. 4112.02(H)(7) provides that it shall be unlawful for any person to:

"(7) Print, publish, or circulate any statement or advertisement, or make or cause to be made any statement or advertisement, relating to the sale, transfer, assignment, rental, lease, sublease, or acquisition of any housing accommodations, or relating to the loan of money, whether or not secured by mortgage or otherwise, for the acquisition, construction, rehabilitation, repair, or maintenance of housing accommodations, that indicates any preference, limitation, specification, or discrimination based upon race, color, religion, sex, familial status, ancestry, handicap, or national origin, or an intention to make any such preference, limitation, specification, or discrimination[.]"

When interpreting R.C. Chapter 4112, Ohio courts have looked to analogous federal statutes and case law for guidance. See *Wooten v. Columbus, Div. of Water* (1993), 91 Ohio App.3d 326, 632 N.E.2d 605. Appellants urge us to hold that, based upon federal case law, the use of "mature adults only" or any similar usage is an automatic violation of R.C. 4112.02(H)(7) and that consideration of the intent of the author or the attendant circumstances is unnecessary.

Federal courts generally permit parties to establish a violation of Section 3604(c), [1] by proving either an actual intent by a defendant to discriminate or that

---

**1.** Section 3604(c), Title 42, U.S.Code, which is comparable to R.C. 4112.02(H)(7), states that it is unlawful:

"To make, print, or publish, or cause to be made printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any

"to the ordinary reader the natural interpretation of the advertisements publish-ed * * * is that they indicate" an impermissible preference. See *United States v. Hunter* (C.A.4, 1972), 459 F.2d 205, certiorari denied (1972), 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189; *Housing Opportunities Made Equal v. Cincinnati Enquirer, Inc.* (C.A.6, 1991), 943 F.2d 644, 646. An ordinary reader is "neither the most suspicious nor the most insensitive." *Ragin v. New York Times Co.* (C.A.2, 1991), 923 F.2d 995, 1002.

 In a commercial advertisement, a plaintiff may establish a cognizable claim under Section 3604(c) if "(a) an ad communicates in an *obvious and undeniable way* a discriminatory preference; or (b) the ad is rendered discrimi-natory through proof of extrinsic circumstances demonstrating discriminatory intent." (Emphasis added.) *Blomgren v. Ogle* (E.D.Wash.1993), 850 F.Supp. 1427, 1439, citing *Housing Opportunities Made Equal v. Cincinnati Enquirer, Inc.* (S.D.Ohio,1990), 731 F.Supp. 801, 804, affirmed (C.A.6, 1991), 943 F.2d 644. The intent of the creator of an ad may be relevant to a factual determination of the message conveyed. *Ragin,* 923 F.2d at 1000. Such evidence may be especially useful where the court must determine the message sent by isolated words rather than a series of ads or an extended pattern of conduct. *Soules v. HUD* (C.A.2, 1992), 967 F.2d 817, 825.

In *Cincinnati Enquirer,* 943 F.2d 644, the Sixth Circuit Court of Appeals determined that the mere use of all-white models in a newspaper ad did not prove that the ad was discriminatory or indicated a preference *per se.* The court noted that the United States Department of Housing and Urban Development ("HUD") issued regulations (Part 109, Title 24, C.F.R.) to provide guidance to advertising media and to persons placing advertisements. *Cincinnati Enquirer,* 943 F.2d at 646. Rather than mandate specific actions by these parties, the HUD regulations sought to provide balance between the identification of impermissible discrimina-tory practices and First Amendment limitations on the restriction of publications and advertising. *Id.* at 647, citing to 45 F.R. 57,102 (Aug. 26, 1980). The court further noted:

" '[T]he regulation describes examples of advertising practices * * * which might be indicative of a violation of (or compliance with) Title VIII.' * * * 'While the practices, etc., cited in the regulation are indices of a standard of conduct to evaluate the existence of discrimination in advertising, they are not intended, *per se,* to establish immutable rules, but to serve as examples of practices, usage, content, etc., which *should* be complied with (or avoided),

---

preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination."

whichever the case may be.' * * * (Emphasis in the original.) Mandatory language was intentionally avoided." *Cincinnati Enquirer,* 943 F.2d at 647.

Thus, the *Cincinnati Enquirer* court rejected a *per se* standard that would make the use of certain words or pictures automatically discriminatory. Rather, that court stated that the use of certain words or pictures "could be a factor in determining whether an advertisement conveys a discriminatory message." *Id.* The court, evaluating the advertisement utilizing the "ordinary reader test" found that, without more, the use of a single ad with only white models did not violate Section 3604(c). *Id.*

In a case cited by appellants, *Jancik v. Dept. of Hous. & Urban Dev.* (C.A.7, 1995), 44 F.3d 553, the court looked to the context of the usage where an ad listed "mature person preferred." The *Jancik* court noted that use of terms listed in HUD regulations is not a violation *per se. Id.* at 556. However, such language may indicate a "possible violation" requiring further proceedings if it is apparent from the context that discrimination is likely to result. *Id.*

Our research revealed only one case that characterizes a violation as being "*per se,*" *i.e., Blomgren v. Ogle* (E.D.Wash.1993), 850 F.Supp. 1427. In that case, the court noted that where advertisements are "clearly discriminatory," a court may determine whether it indicates an impermissible preference to an ordinary reader without inquiry into the author's intent. *Id.* at 1440. The *Blomgren* court found that a provision for the rental of apartments, which stated "no children or pets allowed in the apartments," to be discriminatory on its face. *Id.* However, even in *Blomgren,* the court also considered evidence as to the actual implementation of the provision, thus diluting its *per se* rule.

■ In this case, while one interpretation of "mature adults only" might be that only older adults without children were preferred, an ordinary reader, as the trial court determined, could just as easily conclude that appellees were attempting to exclude irresponsible renters. In support of the latter interpretation, we note that "only" is an adverb and would modify the verb "rent" if the ad were in sentence form; that is, "[we rent to] mature adults only" or, expressed in a non-misplaced format, "we only rent to mature adults." Nothing in the ad specifically excludes children, and, in fact, the "renting" to children would, at the least, be contractually voidable. Moreover, the fact that in response to the ad, both Thompsons separately contacted appellees indicates that they (if not the "ordinary reader") did not automatically assume that no children would be permitted. Therefore, since the advertisement was not clearly discriminatory on its face, it was proper to consider evidence presented as to the author's intent.

■ Appellees testified that because the previous "immature" tenants had damaged the apartment, they sought to attract a different type of renter. In

addition, there was no evidence that appellees had ever refused to rent to people with children. In fact, the tenant who eventually rented the apartment did have a teenage minor child.

The purpose of R.C. 4112.02 is to prevent discrimination. Appellees' use of "mature adults only" may have indicated a potential violation, worthy of further investigation. However, in this case, the use of ambiguous language without proof or substantial inference of appellees' intent to discriminate did not establish a violation of R.C. 4112.02. Therefore, we conclude that the trial court did not err in dismissing appellants' discrimination claim.

Accordingly, appellants' first and second assignments of error are not well taken.

## II

Appellants, in their third assignment of error, assert that the trial court erred in awarding attorney fees on the basis that the suit was frivolous.

R.C. 2323.51(B)(1) provides that a court may award "reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to a party to the civil action or appeal who was adversely affected by frivolous conduct."

R.C. 2323.51(A)(2)(a)(ii) prohibits conduct that "(ii) * * * is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law."

In this case, the trial court found appellants' case against appellees to be "meritless." We construe that to mean that the court found it to be unwarranted under existing law or unsupported by a good-faith argument for an extension, modification, or reversal of existing law. See R.C. 2323.51(A)(2)(a)(ii). An appellate court is vested with authority to conduct a *de novo* review to determine whether a pleading or argument was unwarranted under existing law. *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 51, 673 N.E.2d 628, 631–632; *Maines Paper & Food Service–Midwest, Inc. v. Regal Foods, Inc.* (1995), 100 Ohio App.3d 454, 460, 654 N.E.2d 355, 359–360.

In this case, we must balance the goal of deterring frivolous suits against the danger of chilling legitimate complaints instituted by an authorized government agency.[2] Having fully reviewed the record, we conclude that appel-

---

**2.** Although appellants argue that R.C. 2323.51 does not apply to state agencies, we could find nothing to support this proposition. R.C. 2335.39, the statute suggested by appellants to be

lants pursued the alleged violation based upon their good-faith interpretation of federal case law. Since this issue has not been specifically addressed or ruled upon by Ohio courts, we cannot say that appellants' pursuit of this case was absolutely unwarranted under existing law.

Accordingly, appellants' third assignment of error is well taken.

The judgment of the Wood County Court of Common Pleas is affirmed in part and reversed only as to the award of attorney fees. Court costs of this appeal are assessed equally among the parties.

*Judgment affirmed in part*
*and reversed in part.*

MELVIN L. RESNICK and ABOOD, JJ., concur.

CHARLES D. ABOOD, J., retired, of the Sixth Appellate District, sitting by assignment.

appellees' sole remedy for attorney fees, contemplates awards after final judgment to parties who prevail in a suit against a state agency. Therefore, we conclude that if a court finds some particular pleading "frivolous" in the midst of a suit prior to trial, it may utilize R.C. 2323.51 to prevent malicious or unwarranted actions.