[Cite as *Winkle v. Co*, 2016-Ohio-6957.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MARK WINKLE | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 27066 |
| | : | |
| v. | : | Trial Court Case No. 2015-CV-3672 |
| | : | |
| THOMAS C. CO, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendants-Appellees* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of September, 2016.

. . . . . . . . . .

MARK WINKLE, 4790 Hilton Corporate Drive, Suite 107, Columbus, Ohio 43232
    Plaintiff-Appellant-Pro Se

NICOLE A. MITCHELL, Atty. Reg. No. 0068178, 105 East Fourth Street, Suite 1400, Cincinnati, Ohio 45202
RENEE D. BUSSE, Atty. Reg. No. 0092823, 123 Market Street, P.O. Box 910, Piqua, Ohio 45356
    Attorneys for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this action, Plaintiff-Appellant, Mark Winkle, appeals pro se from a judgment dismissing his claims against Defendants-Appellees, Thomas C. Co, Prima Management, LLC, TL Squared LLC, and Aim High Construction, LLC (collectively, "Prima").

**{¶ 2}** In support of his appeal against the judgment in Prima's favor, Winkle contends that the trial court erred in rendering summary judgment in favor of these defendants. Winkle further contends that the trial court erred in granting Prima's motion to dismiss and/or motion for summary judgment after Winkle had filed a motion to amend the complaint. Finally, Winkle contends that the trial court erred in granting Prima's motion to dismiss and/or motion for summary judgment after Winkle amended his complaint to include charges against Prima's legal counsel for civil obstruction of justice.

**{¶ 3}** Winkle also asserts an assignment of error against Defendants-Appellees, Brittinie Amerman and David Hamilton, but Winkle failed to timely appeal from the final appealable orders entered in favor of Amerman and Hamilton.

**{¶ 4}** For the reasons stated below, we conclude that Winkle's assignments of error are without merit. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 5}** In July 2015, Winkle filed a pro se complaint against Amerman, Hamilton, and Prima, alleging breach of contract, fraud, intentional endangering of others, vandalism, intimidation, mail theft, aiding and abetting mail theft, and civil rights violations arising under R.C. 4112.02(H)(4),(5),(12),(14),(15),(16),(19), and R.C. 4112.02(J)

(disability discrimination). According to the complaint, these claims arose during Winkle's occupancy of an apartment located at 1354(A) Ohmer Street, in Dayton, Ohio.

{¶ 6} The following facts are alleged in the complaint. Winkle moved into the apartment on November 22, 2014, and, thereafter, complained to Prima about Amerman, who lived in Apartment B, which was across the hall from Winkle's apartment. Prima owned and managed the property.

{¶ 7} According to Winkle, Hamilton illegally moved into Amerman's apartment on February 2, 2015, in violation of Amerman's lease agreement. Winkle complained to the Prima Defendants about various matters, including a nearly flat tire and damage to his car's rear window seal on February 20, 2015; his suspicion that Hamilton had committed possible mail theft; the fact that his car was blocked in by a blue Volkswagen parked in front of his car; the alleged theft of a box of business cards that came in the mail; and Hamilton's occupancy in Amerman's apartment. In addition, Winkle called the police in May 2015 about the sounds of someone allegedly being choked in Amerman's apartment during sex, and filed a complaint "against 1354 Ohmer St., Apt. B," with the Beavercreek police in June 2015. This complaint was about alleged mail theft. According to Winkle, Prima refused to contact the U.S. Postal Service and provide information about the alleged mail theft.

{¶ 8} In the complaint, Winkle also alleged that when he moved into his apartment in November 2015, he was told to pick a parking space, and chose one that would permit him to open his driver's side door and gradually lower himself into the driver's seat. He claimed the extra room was needed because of a previous torn ligament that he did not want to reinjure. According to the complaint, Winkle was also told by an apartment

manager who represented Prima that his "handicapped parking space" would not be interfered with so long as he resided in the building.

{¶ 9} On June 1, 2015, Winkle informed Prima that it was in violation of the lease terms, and he threatened to sue Prima for damages. At that time, Winkle emailed Prima of his intent to sue under R.C. 4112 et. seq., "Civil Rights Disabilities," breach of contract, breach of the lease, and aiding and abetting mail theft. According to Winkle, he received "threatening text messages" from Prima indicating that he could no longer park in his "handicap parking space" and that his car would be towed if he did. Winkle then informed Prima on June 29, 2015, that he had contacted the Dayton Police and would be seeking a restraining order against Prima and Hamilton. Again, these were all allegations in the complaint, not matters that were established in connection with any summary judgment motion.

{¶ 10} In his prayer for relief, Winkle sought damages of not less than $25,000 from each defendant, plus punitive damages, and not less than $300,000 for disability discrimination.

{¶ 11} In mid-August 2015, Hamilton and Amerman filed separate motions to dismiss. The gist of these motions was that no contract existed between these defendants and Winkle; that there were no facts in the complaint that indicated a duty to disclose any facts to Winkle; that there were no causes of action in Ohio for most of the matters alleged in the complaint; that these defendants were not persons subject to R.C. Chap. 4112; and that Winkle failed to exhaust administrative remedies.

{¶ 12} The trial court filed an order indicating that Winkle must reply to the motions to dismiss by August 26, 2015. Winkle filed an untimely response on September 17,

2015, and the trial court filed separate decisions granting the motions to dismiss on September 22, 2015. The court also added Civ.R. 54(B) certifications to its decisions. Winkle did not file a notice of appeal from the court's decisions on the motions to dismiss.

{¶ 13} Subsequently, on January 11, 2016, Prima filed a motion for summary judgment, or in the alternative, motion to dismiss. The motion was supported by the affidavit of Thomas Co, who was a member and employee of Aim High Construction, LLC, and Prima Management, LLC. Winkle filed a response on January 26, 2016, and Prima replied on February 2, 2016.

{¶ 14} On February 4, 2016, Winkle filed a motion for leave to amend his complaint to add parties, including counsel for Prima, against whom he wished to assert claims of civil conspiracy and perjury. The trial court overruled the motion to amend the complaint, and then on March 1, 2016, filed a decision granting Prima's motion for summary judgment or in the alternative, motion to dismiss. On March 31, 2016, Winkle filed a notice of appeal, indicating only that he was appealing from the judgment that the court issued in favor of the Defendants on March 1, 2016.

II.  Alleged Error in Granting Prima's Motion for Summary Judgment

{¶ 15} Winkle's First Assignment of Error states that:

The Trial Court Committed Prejudicial Error in Granting Defendant-Appellees' Thomas C. Co, Prima Management LLC, TL Squared LLC, and Aim High Construction LLC's Motion for Summary Judgment Based Upon Its Opinion That There Were No Substantial Matters Before the Court to Proceed to Trial.

**{¶ 16}** Under this assignment of error, Winkle first contends that Prima improperly failed to seek leave of court before filing its motion for summary judgment. Winkle also contends that the trial court erred in failing to employ the definition of an "aggrieved person" under the Fair Housing Act, that Prima had actual knowledge and authority to address the alleged discrimination, and that the court erred in failing to apply the appropriate four-part test for evaluating whether circumstantial evidence shows discriminatory intent.

**{¶ 17}** In its decision, the trial court granted summary judgment to Prima on Winkle's breach of contract and civil rights claims, and granted the motion to dismiss with respect to Winkle's remaining claims. Because this assignment of error raises issues only about summary judgment, our discussion will deal only with the summary judgment portion of the decision. In addition, Winkle's brief challenges the summary judgment decision only with respect to the civil rights claims, not in connection with any breach of contract claims. Consequently, we will consider only the civil rights claims.

**{¶ 18}** The standards for summary judgment motions are well-established. Regarding summary judgment, "[a] trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999). "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH,*

*Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 19} As a preliminary point, we note that Winkle is incorrect in arguing that Prima needed to ask leave to file a summary judgment motion. On September 30, 2015, the trial court filed a final pretrial order, setting forth various deadlines, including a deadline of March 1, 2016, for filing motions for summary judgment. Prima's motion, filed on January 11, 2016, was well within this deadline, and no leave of court was required.

{¶ 20} In the complaint, Winkle alleged violations of R.C. 4112.02(J) and R.C. 4112.02(H)(4),(5),(12),(14),(15),(16), and (19). As pertinent here, R.C. 4112.02 provides that:

It shall be an unlawful discriminatory practice:

* * *

(H) For any person to do any of the following:

* * *

(4) Discriminate against any person in the terms or conditions of selling, transferring, assigning, renting, leasing, or subleasing any housing accommodations or in furnishing facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing accommodations, * * * because of race, color, religion, sex, military status, familial status, ancestry, disability, or national origin or because of the racial composition of the neighborhood in which the housing accommodations are located;

(5) Discriminate against any person in the terms or conditions of any

loan of money, * * * for the acquisition, construction, rehabilitation, repair, or maintenance of housing accommodations because of race, color, religion, sex, military status, familial status, ancestry, disability, or national origin or because of the racial composition of the neighborhood in which the housing accommodations are located;

* * *

(12) Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person's having exercised or enjoyed or having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by division (H) of this section;

(14) Refuse to sell, transfer, assign, rent, lease, sublease, or finance, or otherwise deny or withhold, a burial lot from any person because of the race, color, sex, military status, familial status, age, ancestry, disability, or national origin of any prospective owner or user of the lot;

(15) Discriminate in the sale or rental of, or otherwise make unavailable or deny, housing accommodations to any buyer or renter because of a disability of any of the following:

(a) The buyer or renter;

(b) A person residing in or intending to reside in the housing accommodations after they are sold, rented, or made available;

(c) Any individual associated with the person described in division (H)(15)(b) of this section.

(16) Discriminate in the terms, conditions, or privileges of the sale or

rental of housing accommodations to any person or in the provision of services or facilities to any person in connection with the housing accommodations because of a disability of any of the following:

(a) That person;

(b) A person residing in or intending to reside in the housing accommodations after they are sold, rented, or made available;

(c) Any individual associated with the person described in division (H)(16)(b) of this section.

\* \* \*

(19) Refuse to make reasonable accommodations in rules, policies, practices, or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling unit, including associated public and common use areas;

\* \* \*

(J) For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

{¶ 21} Some of these provisions are clearly inapplicable to the case before us. For example, R.C. 4112.02(H)(5) obviously does not apply, because this case does not involve provision of a loan relating to housing.  However, we need not address each provision individually, because Winkle's claims fail on grounds applicable to any disability

claim.

{¶ 22} Under established law, "[a]n aggrieved party may, pursuant to R.C. 4112.99, institute an independent civil action to seek redress for discrimination on the basis of physical disability." *Elek v. Huntington Natl. Bank*, 60 Ohio St.3d 135, 573 N.E.2d 1056 (1991), paragraph one of the syllabus. "When interpreting R.C. Chapter 4112, Ohio courts have looked to analogous federal statutes and case law for guidance." (Citation omitted.) *Ohio Civ. Rights Comm. v. Harlett*, 132 Ohio App.3d 341, 344, 724 N.E.2d 1242 (6th Dist.1999). The Fair Housing Act, 42 U.S.C. 3601, et. seq., is such a statute, and federal cases are used to evaluate claims for fair housing violations in Ohio. *Id. See also Carter v. Russo Realtors*, 10th Dist. Franklin No. 00AP-797, 2001 WL 537019, *1 (May 22, 2001), and *Ohio Civ. Rights Comm. v. Myers*, 2d Dist. Montgomery No. 25752, 2014-Ohio-144, ¶ 24.

{¶ 23} "A disabled individual alleging unlawful housing discrimination * * * can rely on any of several different theories to establish an FHA violation: disparate treatment, disparate impact, failure to make a reasonable accommodation, or failure to permit a reasonable modification." *Hollis v. Chestnut Bend Homeowners Assn.*, 760 F.3d 531, 538 (6th Cir.2014).[1] *Accord Anderson v. City of Blue Ash*, 798 F.3d 338, 360 (6th Cir.2015).

{¶ 24} In situations where disparate treatment is involved, plaintiffs must show animus, and the three-step test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is used. *Hollis* at 539. This test "shifts the burden of production from the plaintiff to the defendant and then back to the plaintiff in an effort

---

[1] "FHA" refers to the Fair Housing Act, 42 U.S.C. 3601, et. seq.

to zero in on the specific intent underlying the defendant's conduct." (Citation omitted.) *Id.* Although the burden of production shifts, "[a]t all times the burden of persuasion rests with the plaintiff." *Id.* at 538*. Accord Anderson* at 364.

**{¶ 25}** However, where reasonable accommodation claims (which do not require proof of discriminatory intent), are involved, the focus is on "whether the proposed accommodation is reasonable and whether it is necessary to afford disabled persons an equal opportunity for enjoyment." *Hollis* at 540, citing *Smith & Lee Assoc., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 794 (6th Cir.1996).

**{¶ 26}** In this latter situation:

An FHA reasonable-modification plaintiff, like an FHA reasonable-accommodation plaintiff, must prove both the reasonableness and necessity of the requested modification. And although we sometimes refer to those as the "operative elements," other equally important elements also comprise the claim. In addition to proving reasonableness and necessity, an FHA reasonable-accommodation or reasonable-modification plaintiff also must prove that she suffers from a disability, that she requested an accommodation or modification, that the defendant housing provider refused to make the accommodation or to permit the modification, and that the defendant knew or should have known of the disability at the time of the refusal. *See Overlook Mut. Homes, Inc. v. Spencer*, 415 Fed.Appx. 617, 621 (6th Cir.2011) (citing *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir.2005)). The burden is on the plaintiff to establish each element. *See Groner v. Golden Gate Gardens*

*Apartments*, 250 F.3d 1039, 1044-45 (6th Cir.2001) * * *.

(Citation omitted.)   *Hollis*, 760 F.3d at 541.

{¶ 27} Assuming for the sake of argument that Winkle is making a "reasonable accommodation" argument (which is easier to prove than claims involving intent), the trial court found, and we agree, that Winkle failed to establish that he suffers from a disability.

{¶ 28} R.C. 4112.01(A)(21) states that " 'Disabled tenant' means a tenant or prospective tenant who is a person with a disability."   R.C. 4112.01(A)(13) defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

{¶ 29} R.C. 4112.01(16)(a) further defines a "mental or physical impairment" for purposes of R.C. Chap. 4112 to include:

(i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine;

(ii) Any mental or psychological disorder, including, but not limited to, mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities;

(iii) Diseases and conditions, including, but not limited to, orthopedic,

visual, speech, and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, human immunodeficiency virus infection, mental retardation, emotional illness, drug addiction, and alcoholism.

**{¶ 30}** In its decision, the trial court relied on the affidavit of Thomas Co, which stated as follows:

8.   Before, during, and after Mr. Winkle's tenancy, Mr. Winkle never provided me, Prime [sic] Management, LLC or anyone associated with us any information from a doctor or physician that Mr. Winkle was "disabled" or "handicapped."   I never saw from my own observations any indication that Mr. Winkle had a physical "disability" and when he made that statement, I asked him about his disability but he never provided any confirmation.

9.   Mr. Winkle never provided any medical information that he was injured, or that he had any residual effects from this injury that rendered him "disabled" or "handicapped."

10.   There is no "handicapped parking space" outside of the 1354 Ohmer Ave. apartments.

11.   There is a parking space for each apartment marked with the apartment letter corresponding to the respective apartment.

12.   Mr. Winkle merely picked the parking space he wanted, and did not want to use the parking space assigned to his apartment.

Affidavit of Thomas C. Co, attached as Ex. 1 to Prima's Motion for Summary Judgment, Doc. #43.

{¶ 31} When confronted with this evidence, Winkle failed to present any evidence that complied with Civ.R. 56(E). This part of Civ.R. 56 mandates that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 32} "The principal purpose of Civ.R. 56(E) is to enable movement beyond allegations in pleadings and to analyze the evidence so as to ascertain whether an actual need for a trial exists." *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau*, 88 Ohio St.3d 292, 300, 725 N.E.2d 646 (2000), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 33} In responding to the summary judgment motion, Winkle did not provide the court with any affidavits or other proper evidence to indicate that he was disabled. As was noted, Winkle could not simply rely on the allegations in his complaint. Once a moving party has satisfied its burden under Civ.R. 56, "the nonmoving party is not permitted to rest upon the allegations or denials contained in his or her pleading, but must come forth with specific facts showing the existence of a genuine issue for trial." (Citations omitted.) *Buzzard v. Pub. Emp. Retirement Sys. of Ohio*, 139 Ohio App.3d 632, 635, 745 N.E.2d 442 (10th Dist.2000).

{¶ 34} In *Buzzard*, the court observed that Civ.R. 56(C) contains a "limited list of material that may be considered when ruling upon a motion for summary judgment." (Citation omitted.) *Id.* at 636. If a document is not of a type listed, "it may be introduced

as proper evidentiary material if incorporated by reference in a properly framed affidavit." (Citations omitted.) *Id.* However, " '[t]he proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E).' " *Id.,* quoting *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 222, 515 N.E.2d 632 (8th Dist.1986). *Accord CitiMortgage, Inc. v. Guinther*, 10th Dist. Franklin No. 12AP-654, 2013-Ohio-4014, ¶ 22; *Reeser v. Weaver Bros., Inc.*, 2d Dist. Darke No. 1359, 1995 WL 386849, *5 (May 1, 1995).

**{¶ 35}** Noting that the plaintiff had failed to submit any evidence of the type listed in Civ.R. 56(C), and had also failed to properly incorporate the material that was submitted, the court of appeals in *Buzzard* affirmed the summary judgment that had been granted to the defendant. *Buzzard* at 637-639.

**{¶ 36}** The same observations and conclusions apply here. Winkle claimed in his complaint that he had a disability, but he did not provide any evidence to support that claim. He did not even file an affidavit in opposition to the motion for summary judgment. As a result, the trial court did not err in rendering summary judgment on the claims brought under R.C. Chap. 4112. There was simply no evidence to challenge the facts Prima established.

**{¶ 37}** Furthermore, even though Winkle was a pro se litigant, "it is well-established that pro se litigants are held to the same rules, procedures, and standards as litigants represented by counsel." *Goodrich v. Ohio Unemp. Comp. Rev. Comm.*, 10th Dist. Franklin No. 11AP-473, 2012-Ohio-467, ¶ 25, citing *Zukowski v. Brunner*, 125 Ohio St.3d 53, 2010-Ohio-1652, 925 N.E.2d 987. (Other citations omitted.) *Accord Cox v. Oliver*,

2d Dist. Montgomery No. 26515, 2015-Ohio-3384, ¶ 20. "It is true that a court may, in practice, grant a certain amount of latitude toward pro se litigants. * * * However, the court cannot simply disregard the rules in order to accommodate a party who fails to obtain counsel." (Citation omitted.) *Goodrich* at ¶ 25. *Accord Cox* at ¶ 22.

**{¶ 38}** In *Karnofel v. Kmart Corp.*, 11th Dist. Trumbull No. 2007-T-0036, 2007-Ohio-6939, the court of appeals affirmed a grant of summary judgment to two defendants, based on a pro se litigant's failure to submit proper evidentiary materials in response to their summary judgment motions. *Id.* at ¶ 21-30. The court stressed that "[a]though this may seem to be a technicality to a non-attorney, the Ohio Rules of Civil Procedure must be followed regardless of whether the litigant is represented by counsel or appears pro se." *Id.* at ¶ 27. In this regard, the court stressed that " '[i]f the courts treat pro se litigants differently, the court begins to depart from its duty of impartiality and prejudices the handling of the case as it relates to other litigants represented by counsel.' " *Id.*, quoting *State v. Pryor*, 10th Dist. Franklin No. 07-AP-90, 2007-Ohio-4275, ¶ 9. (Other citation omitted.)

**{¶ 39}** Based on the preceding discussion, the First Assignment of Error is overruled.


III. Alleged Error in Dismissal of Claims Against Amerman and Hamilton

**{¶ 40}** Winkle's Second Assignment of Error states that:

The Trial Court Committed Prejudicial Error in Granting Defendants-Appellees' Brittnee [sic] Amerman['s] and David Hamilton['s] Motion[s] to Dismiss After the Plaintiff Had Submitted an Amended Complaint, in Which

the Defendant Had Clearly Violated the Plaintiff's Contractual Rights, and Had Violated the Plaintiff's Civil Rights.

{¶ 41} Under this assignment of error, Winkle argues that the trial court erred in concluding that he could not sue Amerman and Hamilton for their alleged criminal acts. In responding to this assignment of error, Prima argues that the trial court's decision on these matters is not properly before us because Winkle failed to appeal the court's decision within 30 days. Therefore, we will consider this point first, as it may affect our ability to hear the appeal of the judgments in favor of Amerman and Hamilton.

{¶ 42} On September 22, 2015, the trial court filed two decisions: one granted Amerman's motion to dismiss, and the other granted Hamilton's motion to dismiss. As a result, the court dismissed all claims against these defendants. Each entry included a Civ.R. 54(B) certification stating that the order was a final appealable order, that there was no just cause for delay, and that a notice of appeal must be filed within 30 days. Civ.R. 58(B) notices of these final appealable orders were issued and were sent to the parties on September 22, 2015. Winkle did not file a notice of appeal from these orders within 30 days, nor did he include the September 22, 2015 judgments within the notice of appeal he did file on March 31, 2016. Instead, Winkle stated only that he was appealing from the decision entered by the trial court on March 1, 2016.

{¶ 43} "An appellate court, when determining whether a judgment is final, must engage in a two-step analysis. First, it must determine if the order is final within the requirements of R.C. 2505.02. If the court finds that the order complies with R.C. 2505.02 and is in fact final, then the court must take a second step to decide if Civ.R. 54(B) language is required." *Gen. Acc. Ins. Co. v. Ins. Co. of N. America*, 44 Ohio St.3d

17, 21, 540 N.E.2d 266 (1989). " 'Civ.R. 54(B) does not alter the requirement that an order must be final before it is appealable.' " *Id.,* quoting *Douthitt v. Garrison*, 3 Ohio App.3d 254, 255, 444 N.E.2d 1068 (9th Dist.1981).

**{¶ 44}** The various types of orders that may be reviewed are outlined in R.C. 2505.02(B). As pertinent here, R.C. 2505.02(B)(1) provides that:

(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment * * *.

**{¶ 45}** "The term 'substantial right' has been construed to mean a 'legal right,' one protected and supported by law." *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio,* 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989), citing *Armstrong v. Herancourt Brewing Co.*, 53 Ohio St. 467, 42 N.E. 425 (1895). "A court order which deprives a person of a remedy which he would otherwise possess deprives that person of a substantial right." *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88, 541 N.E.2d 64 (1989) "For an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court." (Citations omitted.) *Hamilton Cty. Bd.* at 153.

**{¶ 46}** In *Chef Italiano*, the Supreme Court of Ohio concluded that where the claims were dismissed in their entirety against a party, the order was a final order under R.C. 2505.02 with respect to that party because the order deprived the plaintiff of the ability to recover a judgment against the party. *Chef Italiano* at 89. However, because the order

in question did not contain a Civ.R. 54(B) certification, the court held that the order, though final, was not appealable. *Id.*

{¶ 47} "In making its factual determination that the interest of sound judicial administration is best served by allowing an immediate appeal, the trial court is entitled to the same presumption of correctness that it is accorded regarding other factual findings. An appellate court should not substitute its judgment for that of the trial court where some competent and credible evidence supports the trial court's factual findings." (Citation omitted.) *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 355, 617 N.E.2d 1136 (1993).

{¶ 48} "A trial court is not required to give reasons for its decision to add Civ.R. 54(B) language to an interlocutory order, so long as the record supports adding the language." (Citation omitted.) *Dywidag Sys. Internatl., USA, Inc. v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 10AP-270, 2010-Ohio-3211, ¶ 29. Nonetheless, courts have held that the presumption of correctness does not apply " 'where the judgment entry indicates the trial court acted reflexively and employed the language as boilerplate.' " *Jeffrey v. Marietta Mem. Hosp.*, 10th Dist. Franklin No. 11AP-492, 2013-Ohio-1055, ¶ 66, quoting *Dywidag* at ¶ 29. (Other citation omitted.) However, "where the record indicates that the interests of sound judicial administration could be served by a finding of 'no just reason for delay,' the trial court's certification determination must stand. An appellate court need not find that the trial court's certification is the most likely route to judicial economy, but that it is one route which might lead there." *Wisintainer* at 355. *Accord Jeffrey* at ¶ 67-68.

{¶ 49} In the case before us, the trial court did not provide specific reasons for the

Civ.R. 54(B) decision. However, the record supports the court's decision. As was noted in *Wisintainer* (which involved multiple parties), "[a] successful appeal subsequent to trial would lead to the possibility of the case being tried twice, both times with 'empty chairs.' That possibility is enough to demonstrate that the trial court reasonably found that there was 'no just reason for delay' for appellants' appeal." *Id*. at 356.

{¶ 50} The court further noted in *Wisintainer* that "[m]ore important than the avoidance of piecemeal appeals is the avoidance of piecemeal trials. It conserves expense for the parties and clarifies liability issues for jurors when cases are tried without 'empty chairs.' " *Wisintainer*, 67 Ohio St.3d at 355, 617 N.E.2d 1136. If an immediate appeal had been taken from the trial court's decisions on September 22, 2015, the possibility of piecemeal trials, and a second trial after a successful appeal would have been avoided.

{¶ 51} Accordingly, the September 22, 2015 judgment entries were final appealable orders. App.R. 4(A) requires notices of appeal to be filed within 30 days of entry of the judgment or order being appealed. Because Winkle failed to file a notice of appeal within 30 days of the judgment entries and the Civ.R. 58(B) notice that was entered on the docket and served, we lack jurisdiction over the appeal, insofar as it pertains to the judgments dismissing the claims against Amerman and Hamilton. *See U.S. Bank Natl. Assn. v. Crutcher*, 2d Dist. Montgomery No. 25338, 2013-Ohio-2011, ¶ 5-6; *Barron v. Brown*, 2d Dist. Greene No. 96 CA 45, 1996 WL 596526, *1 (Oct. 18, 1996) (failing to comply with the time requirements of App.R. 4(A) is a jurisdictional defect and is fatal to appeal).

{¶ 52} Accordingly, Winkle's Second Assignment of Error is overruled, based on

our lack of jurisdiction over appeals from judgments dismissing the claims against Amerman and Hamilton.

IV.   Alleged Error in Granting Prima's Motions

After Appellant Filed a Motion for Leave to Amend the Complaint.

**{¶ 53}** Winkle's Third Assignment of Error states that:

The Trial Court Committed Prejudicial Error in Granting the Defendant-Appellees' Thomas C. Co, Prima Management LLC, TL Squared LLC, and Aim High Construction LLC's Motion to Dismiss and/or Motion for Summary Judgment After the Plaintiff Had Filed a Motion for Leave to Amend His Complaint.   The Defendant and His Legal Counsel Had Both Committed Civil Obstruction of Justice by Making False Statements to the Court Under Threat of Perjury Under Oath.

**{¶ 54}** Winkle's argument under this assignment of error does not match the assignment of error.   Specifically, Winkle contends that he had no obligation to respond to Prima's motions to dismiss and for summary judgment until after the trial court had ruled on Prima's motion for leave to file a motion for summary judgment.   Apparently, according to Winkle, the trial court erred in ruling on the motions without first having given him an opportunity to respond.

**{¶ 55}** In support of this argument, Winkle relies on *Premier Restoration & Mechanical Sys., Inc. v. Arlington Arms Apts., L.L.C.*, 12th Dist. Butler No. CA2015-09-173, 2016-Ohio-1152.   In *Premier*, the trial court issued a pretrial order establishing an August 1, 2015 deadline for filing motions for summary judgment.   One day prior to the

deadline, the plaintiff filed a motion to extend the pretrial deadlines, a motion for leave to file a motion for summary judgment, and a motion for summary judgment. *Id.* at ¶ 3. On August 27, 2015, the trial court granted leave to file the motion for summary judgment, and one minute later, granted summary judgment to the plaintiff. *Id.* at ¶ 4. After the defendant appealed, the court of appeals reversed and remanded the case to the trial court.

{¶ 56} The court of appeals noted that an applicable local rule of the trial court ordinarily provided non-moving parties with 21 days to file memoranda in opposition to a motion. *Id.* at ¶ 8. According to the court of appeals, the filing of a motion for leave to file for summary judgment complicated the application of the local rule. In this regard, the court commented that when a moving party " 'seeks leave to file a motion for summary judgment, the non-moving party has no obligation to respond to the merits of the summary judgment motion until the trial court grants leave to file that motion.' " *Id.* at ¶ 9, quoting *Huntington Natl. Bank v. Miller*, 10th Dist. Franklin No. 14AP-716, 2015-Ohio-1558, ¶ 12. (Other citation omitted.)

{¶ 57} However, instead of ruling on the motion for leave and then providing time for the defendant to respond to the motion for summary judgment, the trial court in *Premier* granted the motion for summary judgment immediately after granting the motion for leave. This violated the local rule and contravened the opposing party's right to have a fair opportunity to respond. As a result, the summary judgment decision was reversed, so that the defendant could have an opportunity to respond to the motion for summary judgment. *Id.* at ¶ 10-11.

{¶ 58} Consistent with the local rule involved in *Premier*, Montgomery County

Common Pleas Court Rules allow opposing parties 14 days to file responses to motions after being served with the motion. Loc.R. 2.05 (B)(2)(b) of the Court of Common Pleas of Montgomery County, General Division. However, unlike the movant in *Premier*, Prima did not ask for leave to file the summary judgment motion, nor was Prima required to ask for leave. As was noted earlier, the summary judgment motion was filed on January 11, 2016, well in advance of the March 1, 2016 deadline. Accordingly, Winkle's response to the motion was due fourteen days after service of the motion. Winkle did reply to the motion on January 26, 2016, and, unlike the defendant in *Premier*, was not prevented from responding to the summary judgment motion.

{¶ 59} Accordingly, the Third Assignment of Error is overruled.

## V. Alleged Error in Granting Prima's Motions
## After Appellant Amended His Complaint

{¶ 60} Winkle's Fourth Assignment of Error states that:

The Trial Court Committed Prejudicial Error in Granting the Defendant-Appellees Thomas C. Co, Prima Management LLC, TL Squared LLC, and Aim High Construction LLC's Motion to Dismiss and/or Motion for Summary Judgment After the Plaintiff Had Amended His Complaint to Include Charges and Damages Against the Defendants' Legal Counsel for Civil Obstruction of Justice for Intentionally Interfering with Discovering [sic], Making False Statements Under Oath to the Court, Intentionally Delaying the Deposition of Thomas C. Co, Who Openly Lied Under Oath During His Deposition Which Was Held at the Offices of His Legal Counsel on February

29, 2016, the Day Before the Court Dismissed This Case.

{¶ 61} Again, the argument under this assignment of error is inconsistent with the asserted assignment of error. In this regard, Winkle contends that the trial court erred in failing to grant his motion for default judgment. Winkle filed two motions for default judgment in the trial court, contending that Prima had failed to respond to his discovery requests and had failed to provide Thomas Co for a deposition that was scheduled for December 23, 2015.

{¶ 62} The Supreme Court of Ohio has held that "[t]he discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. A reviewing court's responsibility is merely to review these rulings for an abuse of discretion." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). An abuse of discretion is defined as "attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Most situations involving "abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.*

{¶ 63} In *AAAA Enterprises*, the court stressed that "[a] decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 64} After reviewing the trial court's actions under these standards, we find no abuse of discretion. Winkle's complaint was filed in mid-July 2015, and the trial court

filed a final pretrial order in late September 2015, setting a trial date for May 30, 2016, and a discovery cut-off of May 2, 2016. Subsequently, on December 2, 2015, Thomas Co filed a motion for a protective order, asking the court to prevent his deposition from taking place on December 23, 2015. The reason given for the motion was that Winkle had unilaterally noticed a deposition for that date, which was not convenient for Thomas Co or his counsel. In the motion, Prima's counsel indicated that she had attempted to resolve the impasse, but Winkle refused, stating that he was "in charge" and would not change the date.

{¶ 65} On December 7, 2015, Winkle filed a motion to compel discovery, a motion for sanctions against the Prima Defendants' attorney, and a motion for default judgment. In the motion, Winkle relied on statements of opposing counsel during a pretrial conference, to the effect that her client would be freely scheduled for discovery. Winkle was also upset about opposing counsel's rejection of his $250,000 settlement offer, and accused her of various unethical conduct, including lying to the court and improperly contacting Winkle's former attorney.[2]

{¶ 66} In responding to Winkle's motion, Prima's counsel indicated that Winkle's

---

[2] The former attorney had represented Winkle in an eviction action brought by Prima Management, LLC, against Winkle for non-payment of rent. Winkle mentioned in his motion for sanctions that he had contacted the Ohio Supreme Court's Disciplinary Counsel about the issue – basically threatening Prima's counsel that Disciplinary Counsel would be investigating her. Prima's Counsel then submitted an affidavit indicating that she had contacted Winkle's prior counsel because Winkle said he was represented by counsel and had told her not to contact him directly. However, contrary to Winkle's statement, the attorney in question indicated that his firm no longer represented Winkle and, in fact, had sent multiple letters to Winkle terminating the relationship. *See* Doc. #32, Memorandum and Affidavit of Lawyer for Defendant, Thomas C. Co, in Opposition to Plaintiff's Motion to Compel Discovery, Motion for Sanctions, and Motion for Default Judgment, pp. 3-4, and Exs. A and B attached to the memorandum and affidavit.

first written discovery request occurred on November 23, 2015, and that the time had not yet elapsed for filing responses. Counsel again discussed the fact that the unilateral deposition date was inconvenient. She also noted that Prima did not make a counter-offer, due to the outrageous nature of Winkle's settlement demand. In addition, counsel stated that Winkle had sent her an email communication on December 7, 2015, asking for a reasonable offer from the defendants so that counsel would not "ruin [her] career over this case." *See* Doc. #32, p. 4, and Ex. C attached to Doc. # 32.

{¶ 67} On December 15, 2015, the court overruled the motion for a protective order, based on Thomas Co's failure to provide specific reasons why the December 23, 2015 date was inconvenient. This was a favorable decision for Winkle and would not be construed as unreasonable or arbitrary.

{¶ 68} The following day, Thomas Co filed a motion for reconsideration, noting that Mr. Co was required to travel to Dayton from outside the state, and that he had previously planned events for December 23, 2015. In the motion, Co gave several alternative dates in January 2016 for his deposition. On December 18, 2015, the trial court filed an entry indicating that Prima's reconsideration motion was moot, based on a phone conference the court had with the parties on December 18, 2015. Again, the court's ruling was not either arbitrary or unreasonable; rather, the court was attempting to resolve differences between the parties.

{¶ 69} Winkle also filed another motion for default judgment, motion to compel, and motion for sanctions on January 26, 2015. This motion was based on most of the matters previously discussed in the December 7, 2015 motion for default judgment. In addition, Winkle alleged that Prima had complied with only one-third of his request for production

of documents, and had redacted items like signatures from some documents. Winkle again accused opposing counsel of lying and obstructing justice, and asked the trial court to refer the matter to the Montgomery County Prosecutor's office for prosecution against Prima's attorneys.

{¶ 70} On January 28, 2015, the trial court overruled Winkle's December 7, 2015 motion for default judgment, motion to compel, and motion for sanctions. The court noted that when Winkle's motion was filed, the time had not yet expired for answering the discovery requests. Furthermore, Winkle failed to file a certificate of impasse as required by the local rules of court.

{¶ 71} After Prima responded to the second motion for default judgment and Winkle filed a reply, the trial court overruled the motion. The court again rejected Winkle's arguments, finding that Winkle had not alleged what discovery was missing. Instead, Winkle had made vague allegations that only about one-third of the discovery had been provided. The court further observed that Prima claimed to have provided all requested discovery, other than redacting some confidential information.

{¶ 72} As in its decision on the first motion for default judgment, the court commented that Winkle failed to file a certificate of impasse. Finally, the court rejected the request for referral to the prosecutor, noting that it did not refer cases for criminal prosecution.

{¶ 73} On appeal, Winkle relies on authority indicating that an "utter failure to respond to * * * discovery requests 'cannot be construed as a good faith effort to comply.' " *Lyons v. Kindell*, 2015-Ohio-1709, 35 N.E.3d 7, ¶ 27 (1st Dist.), quoting *Russo v. Goodyear Tire & Rubber*, 36 Ohio App.3d 175, 178, 521 N.E.2d 1116 (9th Dist.1987). In

*Lyons*, the court of appeals affirmed a decision to grant judgment on liability after a defendant failed to comply with an order requiring him to respond to discovery requests. *Id.* at ¶ 11 and 26-27.

**{¶ 74}** In the case before us, the version of Civ.R. 37(D) in effect at the time of the discovery dispute, provided that:

> If a party or an officer, director, or a managing agent of a party or a person designated under Rule 30(B)(5) or Rule 31(A) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion and notice may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (a), (b), and (c) of subdivision (B)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.[3]

**{¶ 75}** Civ. R. 37(E) further requires parties to make a reasonable effort to resolve

---

[3] Civ.R. 37 was amended, effective July 2016, but the amendments were not in effect at the time of the trial court's decision on sanctions.

discovery disputes before filing motions to compel, and requires that motions be accompanied by a statement indicating what efforts have been made to resolve the dispute. In addition, local rules of the trial court mandate that applications for sanctions cannot be filed until diligent efforts have been made to resolve disputes. *See* Loc.R. 2.09 (B)(4)(b) of the Court of Common Pleas of Montgomery County, General Division. The local rule also states that a certificate of impasse must be filed as part of any formal discovery request. *Id.* at 2.09(C)(2).

**{¶ 76}** "A trial court has broad discretion when ruling upon a motion for sanctions under Civ.R. 37(D)." *Huntington Natl. Bank v. Zeune*, 10th Dist. Franklin No. 08AP-1020, 2009-Ohio-3482, ¶ 17, citing *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. Pursuant to Civ.R. 37(D), a court can impose a default judgment for failure to attend a deposition. *Id.* at ¶ 18. *Accord Kentucky-Indiana Lumber v. Grayland Pelfrey/Remodeling Concepts*, 2d Dist. Clark No. 2006 CA 100, 2007-Ohio-6137, ¶ 8. Similarly, a court can render default judgment where a party fails to comply with a court order requiring the party to answer interrogatories. *See Toney v. Berkemer*, 6 Ohio St.3d 455, 458, 453 N.E.2d 700 (1983). *Accord Kentucky-Indiana Lumber* at ¶ 8.

**{¶ 77}** "However, because default judgment is such a harsh sanction, a trial court may only impose that sanction when a party's absence is due to willfulness or bad faith." *Zeune* at ¶ 17, citing *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 49. (Other citations omitted.) *Accord Kentucky-Indiana Lumber* at ¶ 9.

**{¶ 78}** In the case before us, there was no indication of any willfulness, bad faith,

or fault on Prima's part. As the trial court observed, Winkle failed to file a certificate of impasse and did not discuss the specific discovery that he failed to obtain. Instead, Winkle made only a general assertion about a certain portion of discovery that was not provided.

{¶ 79} In *Associated Business Inv. Corp. v. CTI Communications Inc.*, 2d Dist. Montgomery No. 19211, 2002-Ohio-6385, the plaintiff filed a motion to compel discovery after having exhausted all informal means of resolving a discovery dispute. *Id.* at ¶ 4. The trial court granted the motion to compel and ordered the defendants to produce documents within 30 days, but the defendants failed to comply. *Id.* at ¶ 5.

{¶ 80} Subsequently, the court again ordered defendants to deliver a box of documents within 30 days, and to make other documents available for copying. In addition, the court warned defendants about potential sanctions under Civ.R. 37(B). *Id.* at ¶ 6. Ultimately, after the defendants still failed to produce the documents, the plaintiff filed a motion for default judgment, which was granted by the trial court after an evidentiary hearing. *Id.* at ¶ 9-13.

{¶ 81} On appeal, we observed that "[w]hen granting a motion for default judgment pursuant to Civ.R. 37(B), a court must satisfy two criteria. First, the court must provide the faulting party adequate notice that the default judgment may be rendered against it if the party fails to remedy or explain the non-compliance. *Haddad v. English* (2001), 145 Ohio App.3d 598, 763 N.E.2d 1199. Second, the court must determine that the party's actions were willful or in bad faith." *Id.* at ¶ 22, citing *Toney*, 6 Ohio St.3d at 458, 453 N.E.2d 700.

{¶ 82} We concluded that implied notice about the possibility of a default judgment

was sufficient for due process purposes, and that the court's decision regarding the defendants' willfulness and bad faith was "reasonably supported by the evidence." *Associated Business*, 2d Dist. Montgomery No. 19211, 2002-Ohio-6385, at ¶ 23 and 29.

{¶ 83} Unlike the plaintiff in *Associated Business*, Winkle never attempted to informally resolve discovery disputes, and the trial court had never entered any orders requiring Prima to provide specific documents or answers to interrogatories. Winkle also never filed a motion for an extension of time to respond to summary judgment pursuant to Civ.R. 56(F). Again, even though Winkle is a pro se litigant, he is "held to the same rules, procedures, and standards as litigants represented by counsel." *Goodrich*, 10th Dist. Franklin No. 11AP-473, 2012-Ohio-467, at ¶ 25.

{¶ 84} As a final matter, we note that, contrary to the statement in Winkle's assignment of error, he never filed an amended complaint. Winkle asked for permission to file an amended complaint, but the court denied his request in February 2016.

{¶ 85} Based on the preceding discussion, we find no abuse of discretion on the trial court's part. Accordingly, Winkle's Fourth Assignment of Error is overruled.


VI.   Conclusion

{¶ 86} All of Winkle's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.


Copies mailed to:

Mark Winkle
Nicole A. Mitchell
Renee D. Busse
Patrick Janis
Hon. Timothy N. O'Connell